**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DENISE C., o/b/o John C, deceased,**[1] | : | **Civil No.  4:23-CV-2062** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **FRANK BISIGNANO,**[2] | : | |
| **Commissioner of Social Security,** | : | |
| | : | |
| **Defendant.** | : | |

**MEMORANDUM OPINION**

## I.    Introduction, Procedural History and Medical Background.

In this case we write the final chapter in a longstanding legal saga. That saga

began on June 19, 2017, when John Chalfant applied for disability insurance benefits

(DIB) and supplemental security income (SSI) from the Social Security

Administration. (Tr. 19). Chalfant's claim was denied initially, was denied again

---

[1] The record reveals that the initial named plaintiff, John Chalfant, passed away in May of 2024. (Doc. 12). Therefore, pursuant to Rule 25 of the Federal Rules of Civil Procedure his sister, Denise Chalfant, has been substituted as the plaintiff in this case. (Doc. 13).

[2] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

upon reconsideration, and was denied once again following a hearing before an ALJ, on October 28, 2019. (Tr. 16-35). After the Appeals Council denied his request for review on July 28, 2020, (Tr. 1-6), Chalfant filed an initial appeal with this court in September of 2020. (Tr. 650). In that initial appeal, Chalfant focused on his mental state and challenged the ALJ's evaluation of his emotional impairments. On March 21, 2022, this Court ordered the Appeals Council to vacate the ALJ's decision and remand Chalfant's case to the Commissioner in order to more fully develop the evidence relating to Chalfant's mental health impairments. (Tr. 556 at f.n.1, 646, 667).

However, by the time that this case was remanded for further consideration by the Commissioner in 2022, a series of events had occurred which significantly narrowed and redefined the temporal scope of Chalfant's disability application. At the outset, as Chalfant litigated this case he also filed subsequent applications for disability income and supplemental security income benefits in August 2020. (Tr. 671). This disability insurance application was granted by the State agency as of November 1, 2019. (Tr. 556). Thus, the grant of these benefits in November of 2019, effectively set the end date for what was now a closed period claim of disability. Moreover, in the course of the on-going disability proceedings in this case, Chalfant's counsel amended his alleged onset date of disability to February 10, 2019.

(Tr. 556, 769). As a result of these actions, by the time of the July 13, 2023, remand hearing in this case, (Tr. 575-615), the issue before the ALJ was whether Chalfant had established disability during a ten-month period spanning from February through November 2019.

With the temporal scope of this disability application defined in this fashion, the ALJ held a hearing in this case on July 13, 2023. (Tr. 575-615). At this hearing, Chalfant and a vocational expert testified. (Id.)  In addition, notably, Chalfant's counsel acknowledged that there were no additional medical records relating to this brief ten-month period of claimed disability beyond those which had previously been produced. (Tr. 579-80). In the course of these proceedings the ALJ also declined counsel's suggestion that a consultative medical expert attempt in 2023 some sort of retrospective analysis of the severity of Chalfant's symptoms four years earlier in 2019, stating: "I can't assume [what another examination at the relevant time would have found] I just have to address what evidence I have" (Tr. 603).

It was against this backdrop that the ALJ issued a decision on September 29, 2023, denying Chalfant's claim. (Tr. 553-74). In that decision, the ALJ first defined the relevant time frame of this disability claim as spanning from February through November of 2019. (Tr. 559). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Chalfant had the following severe impairments:

3

degenerative joint disease of the right shoulder, brachial plexopathy, and degenerative disc disease of the cervical spine. (Id.). At Step 3, the ALJ determined that Chalfant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 562-63).

Between Steps 3 and 4, the ALJ fashioned the following residual functional capacity (RFC) assessment for Chalfant:

> After careful consideration of the entire record, the undersigned finds that the claimant had the residual functional capacity to perform less than the full range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c). He was limited to frequent reaching in all directions with the right upper extremity.

(Tr. 563).

In making this determination, the ALJ acknowledged the unusual posture of this case, where Chalfant's claim was now both limited and dated in its temporal scope and applied to a brief period which occurred four years prior to these administrative proceedings. The ALJ also described the relative paucity of evidence supporting the claim, explaining that:

> The claimant has alleged disability due to a nerve injury of the right shoulder/arm, damaged ligaments of the right shoulder, and brachial plexitis (Exhibit 2E).
>
> The claimant testified that he lost all of his muscle in his right bicep/back shoulder blader after receiving a tetanus shot in December 2016. He could feed himself but he would get uncontrollable shakes every day, he had no strength in his right arm, he is right handed and

4

could not write, he was unable to lift his right arm above his head with any weight, and he was unable to hold anything with his right hand. He was only able to pick up and lift and carry ten pounds in front of himself. He would be able to lift and to carry twenty to thirty pounds waist high with his right arm but he could lift heavier weight with his left arm. His sister has been his "caretaker" since 2017.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

As to the claimant's severe impairments, the claimant alleges he experienced pain and numbness in the right arm and right shoulder, neck pain that travels down both arms, weakness of the right upper extremity, and numbness of fingers of the right hand. He also alleges he had difficulty lifting, picking up things, and writing (Exhibits 11F, 14F, and 15F). Additionally, March 2018 diagnostic testing indicated abnormal findings pertaining to the claimant's right shoulder and cervical spine (Exhibit 15F). The he claimant's medical records also indicate that on May 22, 2019, the claimant was assessed with clinical examination findings of 1+ reflexes of the triceps (bilateral), a biceps reflex of zero of the right upper extremity, a 1+ reflex of the left upper extremity, right deltoid/supraspinatus atrophy, reduced muscle bulk of the right bicep and triceps, mild weakness of the right biceps and triceps, limited right shoulder abduction (up to thirty degrees), and reduce pinprick sensation of the right deltoid/bicep area (Exhibit 14F).

Furthermore, the claimant's medical records indicate on June 3, 2019 the claimant was assessed with clinical examination findings of weakness of the right upper extremity with abduction involving the deltoid and some weakness of external rotation and very mildly with elbow flexion (Exhibit 14F). Additionally, June 3, 2019 EMG testing of the claimant's right upper extremity indicated right brachial

plexopathy with primarily motor involvement of the upper trunk (Exhibit 14F).

However, the evidence of record also contains notable evidence that is not consistent with the claimant's allegations pertaining to his severe impairments during the period of time from February 10, 2019 through October 31, 2019. Specifically, the claimant's medical records indicate on February 8, 2019, the claimant denied experiencing any pain (Exhibit 10F). On March 4, 2019, the claimant reported the use of medication (Gabapentin) helps his arm pain a little (Exhibit 14F). On May 22, 2019, the claimant was assessed with a clinical examination finding of 5/5 strength (except for mild weakness of the right bicep/triceps) and the claimant reported experiencing only mild residual neurogenic pain (Exhibit 14F).

Additionally, the claimant's medical records indicate on June 13, 2019 the claimant was noted to be vague about the specific areas of his right arm that were weak and the claimant was assessed with a clinical examination finding of intact abduction of the supraspinatus muscle of the right shoulder (Exhibit 14F). The claimant also testified that he was able to drive, use buttons and zippers, and feed himself between February 10, 2019 and October 31, 2019 (Testimony of John Chalfant).

The claimant's medical records do indicate the claimant received treatment for his severe impairments. Additionally, the claimant utilized prescribed pain medication (Exhibits 10F, 11F, and 14F). However, the evidence discussed in the two immediately preceding paragraphs indicates the claimant did not experience symptoms or limitations related to his severe impairments between February 10, 2019 and October 1, 2019 to the extent alleged by the claimant.

(Tr. 564-65).

The ALJ's decision also cogently explained the dearth of relevant and useful medical opinion evidence, noting that the existing medical opinions on file were

6

from 2017, some two years prior to the amended date of onset, and therefore laced probative power. (Tr. 565-66).

Having explained how the procedural posture of this case resulted in a meager clinical record and did not reasonably allow for any valuable prospective or retrospective medical opinions analyzing the severity of Chalfant's impairments during the narrow time frame of this claim, the ALJ then concluded at Step 4 that Chalfant could perform his past work, (Tr. 566), and further found at Step 5 that there were other jobs in the national economy which Chalfant could perform. (Tr. 567-68). Therefore, the ALJ determined that Chalfant had not met the exacting standards required for a finding of disability and denied this claim. (Id.)

This appeal followed. (Doc. 1). On appeal, Chalfant argues that: (1) the ALJ erred in fashioning this RFC in the absence of a medical opinion, and (2) should have ordered a consultative examination in his case in order to perform a retrospective evaluation of the severity of Chalfant's physical impairments some four years prior to the date of these proceedings. In assessing these arguments, we are enjoined to apply a deferential standard of review, a standard of review which simply asks whether there is "substantial evidence" supporting the Administrative Law Judge's (ALJ) determination. With respect to this legal guidepost, as the Supreme Court has explained:

The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S. Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S. Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S. Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

Further, it is well-settled that: "The decision to order a consultative examination is within the sound discretion of the ALJ." Dietrich v. Saul, 501 F. Supp. 3d 283, 293 (M.D. Pa. 2020) quoting Thompson v. Halter, 45 F. App'x 146, 149 (3d Cir. 2002). Therefore, in order to prevail in this case, it would be incumbent upon Chalfant to overcome these two deferential standards of review—and we find that he has not met this burden in the instant case. Therefore, for the reasons set forth below, mindful of the deferential standards of review which we must follow, we will affirm the decision of the Commissioner.

## II.    <u>Discussion</u>

### A. <u>Substantial Evidence Review – the Role of this Court</u>

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); <u>Johnson v. Comm'r of Soc. Sec.</u>, 529 F.3d 198, 200 (3d Cir. 2008); <u>Ficca v. Astrue</u>, 901 F. Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988).  Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. <u>Mason v. Shalala</u>, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." <u>Consolo v. Fed. Maritime Comm'n</u>, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is

supported by substantial evidence the court must scrutinize the record as a whole."

Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 139 S. Ct. at 1154.

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote

a lack of substantial evidence") (alterations omitted); <u>Burton v. Schweiker</u>, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); <u>see also</u> <u>Wright v. Sullivan</u>, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); <u>Ficca</u>, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." <u>Zirnsak v. Colvin</u>, 777 F.3d 607, 611 (3d Cir. 2014) (citing <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." <u>Burnett v. Comm'r of Soc. Sec. Admin.</u>, 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In <u>Burnett</u>, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable

meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

## B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); see also 20 C.F.R. §404.1505(a).  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the

insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §404.1520(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §404.1545(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has identified limitations that would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. Biller, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at

15

*5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar

v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun

v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12,

2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366

(M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating

the existence of a medically determinable impairment that prevents him or her in

engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this

burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show

that jobs exist in significant number in the national economy that the claimant could

perform that are consistent with the claimant's age, education, work experience and

RFC. 20 C.F.R. §404.1512(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive

requisites. Most significant among these legal benchmarks is a requirement that the

ALJ adequately explain the legal and factual basis for this disability determination.

Thus, in order to facilitate review of the decision under the substantial evidence

standard, the ALJ's decision must be accompanied by "a clear and satisfactory

explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d

Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate

which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-07. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999).

### C. The ALJ's Decision is Supported by Substantial Evidence.

In this setting, we are mindful that we are not free to substitute our independent assessment of the evidence for the ALJ's determinations. Rather, we must simply ascertain whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, Richardson, 402 U.S. at 401, and "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce, 487 U.S. at 565. Further, to the extent that we are invited to re-examine a decision by an ALJ declining to order a consultative examination, it is well settled that such determinations rest in the sound discretion of the ALJ. Dietrich v. Saul, 501 F. Supp. 3d 283, 293 (M.D. Pa. 2020).

Judged against these deferential standards of review, we are constrained to find that substantial evidence supported the decision by the ALJ that Chalfant was not disabled. We further find that the ALJ did not abuse his discretion in declining

to order some sort of four year old retrospective assessment of Chalfant's impairments. Therefore, we will affirm this decision.

This case involved a unique confluence of events. By the time of the ALJ proceedings and decision in 2023, the pertinent time frame of Chalfant's claim was both exceedingly narrow, and significantly dated. The ALJ was presented with trying to assess the severity of Chalfant's impairments based upon a meager clinical record spanning several months in 2019. That sparse clinical history was unadorned by any contemporaneous and persuasive medical opinion evidence. Given these challenges, we find that the ALJ fashioned a residual functional capacity assessment for Chalfant which drew support from substantial evidence in the record, evidence which indicated that the plaintiff retained the ability to perform some work during the specific period of disability at issue here in 2019.

On the unique facts of this case, the lack of any medical opinion supporting this particular RFC is not fatal. Rather, it is axiomatic that: "The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Likewise, the "proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

18

In fact, obtaining a reliable medical opinion simply was not feasible given the unusual circumstances of this case. The existing medical opinions in the record, which were rendered in 2017, simply shed no light on Chalfant's truncated claim which entailed several months in 2019. Moreover, the ALJ aptly recognized that as a matter of law and commonsense a retrospective medical opinion in 2023 which hazarded an estimate concerning the severity of Chalfant's impairments in 2019 based upon scrutiny of a meager medical record  would have little persuasive power. On this score, it is clear that the decision whether to order a consultative examination rests in the sound discretion of the ALJ.  Dietrich v. Saul, 501 F. Supp. 3d 283, 293 (M.D. Pa. 2020). However, it is also understood that, in the exercise of this discretion "retrospective medical opinions are usually insufficient to establish disability." Small v. Comm'r of Soc. Sec. Admin., 60 F. App'x 919, 922 (3d Cir. 2003). Acknowledging the limited value of these sort of remote retrospective medical opinions, the ALJ properly exercised his discretion when he declined to order a consultative opinion in this case. There was no error here.

In the final analysis, the ALJ's decision in this case, reached a conclusion which drew support from substantial evidence in an imperfect, and dated, evidentiary record. Further, the ALJ's conclusion that the passage of four years between the date of alleged disability and time of the ALJ proceedings made

19

attempting to secure further retrospective medical opinions a fruiters endeavor drew substantial support from the record. Thus, the ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant can demand in a disability proceeding. Thus, notwithstanding the argument that this evidence might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.'" Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting Hunter Douglas, Inc. v. NLRB, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we find that substantial evidence supported the ALJ's evaluation of this case.

## III. <u>**Conclusion**</u>

Accordingly, for the foregoing reasons, the final decision of the Commissioner denying these claims will be AFFIRMED.

An appropriate order follows.

<u>*s/ Martin C. Carlson*</u>
Martin C. Carlson
United States Magistrate Judge

DATED: May 23, 2025

21